UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAKE WASHINGTON HEIGHTS CONDOMINIUM OWNERS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC SERVICE MUTUAL INSURANCE COMPANY, a foreign corporation,<br><br>Defendant. | No.  C04-1437Z<br><br>ORDER |

This matter comes before the Court on Defendant's Motion for Protective Order, docket no. 18, and Plaintiff's Motion to Compel, docket no. 20, as well as Defendant's Second Motion for Protective Order, docket no. 40, and Plaintiff's Motion for Waiver of the Attorney-Client Privilege, docket no. 45.

**BACKGROUND**

Plaintiff Lake Washington Heights Condominium Owners Association (the "Association") discovered defects in its condominium buildings.  Because the warranty period under Washington's Condominium Act had run, the Association was unable to bring suit against the developer of the condominium.  Instead, the Association brought suit against WPI Real Estate Services, Inc. ("WPI"), the Associate's property manager, in King County

ORDER  1–

Superior Court.[1] The Association alleged that WPI failed to advise the Association about claims, and the need to initiate suit prior to the running of the statute of limitations.

The claims triggered two insurance policies: an errors and omissions ("E&O") policy issued by CNA Insurance Co. ("CNA") and a commercial general liability ("CGL") policy issued by Public Service Mutual Insurance Company ("PSM"). CNA appointed the firm of Lee Smart Cook Martin & Patterson ("Lee Smart") to defend WPI. PSM appointed the firm of Clark Bovingdon Cole Mills & Lether, P.C. ("Cole Lether") to defend WPI. PSM attorney Mark Israel advised on coverage, settlement, and defense. In this action, the Association alleges that PSM acted in bad faith in its defense and indemnity of WPI. Discovery disputes have emerged regarding two sets of files: Mark Israel's post-June 11th file, and a single document produced as part of Mark Israel's pre-June 11th file.

**A.     Mark Israel's post-June-11th file**.

PSM designated attorney Mark Israel as a trial witness in the present lawsuit in (1) initial witness disclosures; and (2) a February 8, 2005 letter to the Association. It characterized his anticipated testimony as follows:

> Mark Israel may testify about the reservation of rights defense extended to WPI in the underlying lawsuit, including communications with PSM, the association's counsel and/or WPI's defense counsel; evaluation of E&O and CGL coverages potentially available to WPI; information reported to PSM about [the] Association's claims; damages assessment and repair costs estimates affecting Lake Washington Heights Condominium; [and] mediation, settlement negotiations and settlement of association's claims.

Ex. A to McIsaac Decl., docket no. 20. In the letter of February 8, 2005, PSM stated that it had "designated Mark Israel, Esq., its coverage counsel, as a possible fact witness or 'mixed' fact-expert witness with regard to the insurer's coverage decision-making in the handling of the condo association's claims against WPI . . . in the underlying lawsuit. Accordingly, PSM is modifying its records production." Ex. B to McIsaac Decl., docket no. 20.

---

[1] See Lake Washington Heights Condominium Association Owners Association v. Wu Property Investments, Inc., King County Superior Court Cause No. 02-2-28952 SEA.

ORDER   2–

Enclosed with PSM's letter were two classes of additional documents:

(1) Documents from the PSM claim file originally withdrawn on grounds of attorney-client communications and/or related privileges; and

(2) Mark Israel's file reflecting communications with PSM through June 11, 2004, the date of his firm's receipt of Plaintiff's Complaint for Monetary Damages & Declaratory Relief initiating the pending coverage/bad faith lawsuit.

Id. PSM concedes that, "[t]o the extent that Mark Israel can be deposed on matters relating to the insurer's 'reservation of rights' defense and its settlement activities in the underlying case, privileges that might be asserted by Mr. Israel based on his attorney-client communications and/or work product may not be viable." Id. However, PSM insisted that it "does not intend to waive, however, and expressly preserves, any attorney-client communications or work product privileges belonging . . . to Mark Israel, in regard to communications after service of the Complaint." Id.

The Association requested a privilege log and PSM's privilege position. McIsaac Decl., docket no. 20, at ¶ 10. PSM complied in a letter dated March 2, 2005, including a privilege log, its privilege position, and (mistakenly) the documents listed in the privilege log. See Ex. C to McIsaac Decl., docket no. 20. After brief review, the Association realized PSM had inadvertently disclosed the documents in Mr. Israel's post-June-11th file. See McIsaac Decl., docket no. 20, at ¶ 11. It advised PSM of its disclosure on March 4, 2005, but alerted PSM that the Association's counsel had conducted a review of the documents to determine their nature. See Ex. E to McIsaac Decl., docket no. 20. The Association also asserted that "PSM's position regarding Mr. Israel's post-litigation file is untenable" and stated that "[i]f PSM wishes to maintain its position regarding these files, the Association demands an immediate CR 37(a)(2) conference so that it can brief and submit this issue to Judge Zilly." Id. On March 7, 2005, the Association advised PSM as follows:

> As I mentioned over the phone, it is not our objective to embarrass your client in any way or gain any type of unfair advantage based on what seems by all accounts to be an accidental disclosure. These documents have been segregated from the rest of the file, have not been shown to anyone outside of Mr. Riper

ORDER  3–

1   and myself and will be quarantined until an ultimate resolution to this issue is
2   achieved. Nevertheless, it is our duty to zealously pursue the discovery rights
    of clients. With that in mind, it seems obvious that our clients are entitled to
3   full discovery of all materials Mr. Israel participated in generating in this
    matter to which Mr. Israel is a testifying witness.

4   Ex. D to McIsaac Decl., docket no. 20.  The Association then submitted the documents for *in*

5   *camera* review, "so that the Court can determine whether they are in fact subject to discovery

6   by the Association."  See Motion, docket no. 20, at p. 3.

7         **B.**      **E-mail sent May 29, 2004.**

8   Following the post-June 11, 2004 file dispute, an additional document disclosed as

9   part of the "pre-litigation" file was discovered.  A May 29, 2004 email was copied to Mr.

10  Israel, containing a discussion of litigation strategy for the anticipated lawsuit.  Defendant

11  PSM alleges that this email from trial counsel is not related to the underlying bad faith

12  claims, and should be returned as an inadvertent disclosure.  Defendant's counsel did not

13  recognize the document was privileged when it was disclosed.

14  **DISCUSSION**

15  Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any

16  matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant

17  information need not be admissible at the trial if the discovery appears reasonably calculated

18  to lead to the discovery of admissible evidence."  The parties do not dispute that the

19  documents in question would be protected by the attorney-client privilege or work product

20  doctrine, if not for the waiver of that privilege.  8 Wigmore, Evidence § 2292 (1961); see

21  also Heidebrink v. Moriwaki, 104 Wash. 2d 392, 396 (1985).  The issue is whether the

22  privilege has been waived by disclosure, or the decision to use Mr. Israel as a witness.

23        **1.**      **Inadvertent Disclosure.**

24  PSM mistakenly produced attorney Mark Israel's post-June 11 litigation file,

25  apparently as a result of an administrative error.  It argues that mistaken production does not

26  waive the privilege, because it was not an "intentional relinquishment of a known right."

ORDER  4–

Federal courts have applied a multi-factor approach to determining whether waiver should be applied when documents are inadvertently disclosed. See, e.g., United States v. Gangi, 1 F. Supp. 2d 256, 264 (S.D.N.Y. 1998). Factors include (1) the extent to which reasonable precautions were taken to avoid disclosure of privileged documents; (2) the scope of discovery as compared to the amount of privileged material disclosed; (3) the amount of time taken to correct the error; and (4) the overreaching issue of fairness. Id. Under this "flexible" approach, "inadvertent production will not waive the privilege unless the conduct of the producing party or its counsel evinced such extreme carelessness as to suggest that it was not concerned with the protection of the asserted privilege." Id.

### A.   Post-June 11, 2004 documents

Considering the factors set forth above, the Court finds that the inadvertent disclosure of the post-June 11 documents by Defendant PSM did not waive the attorney-client privilege, as to those documents. PSM's inadvertent disclosure of these documents came under unusual circumstances, and in spite of counsel's designation of these documents as privileged. It was an administrative error. Moreover, PSM had always maintained that post-June 11 communications with Israel were privileged. Under these circumstances, the Court concludes that PSM's inadvertent disclosure of Mark Israel's post-June 11 file did not waive the attorney-client privilege.

### B.   May 29, 2004 Email.

The disclosure of the May 29, 2004 email, however, is not merely a case of "inadvertent" disclosure. PSM's counsel expressly waived the privilege for an entire class of documents, and produced those documents. Counsel concedes it was not an "administrative" mistake, but the failure by an attorney to realize that a document within the "pre-litigation" file was subject to privilege. Under these circumstances, readily distinguishable from those set forth above, the Court finds counsel waived the privilege for an entire class of documents. The May 29, 2004 email is discoverable.

ORDER   5–

### 2. Mr. Israel as a Witness.

Washington law disfavors the party who calls its attorney as its witness. "[O]ffering an attorney's testimony concerning matters learned in the course of his employment waives the attorney-client privilege." Kammerer v. Western Gear Corp., 96 Wash. 2d 416, 420 (1981) (citing 8 J. Wigmore, Evidence § 2327, at 637-38 (McNaughton rev. 1961)). PSM attempts to distinguish Kammerer on a factual basis, but the principle for which the Association cites Kammerer is not limited to its facts. Moreover, the Court of Appeals approved Wigmore's analysis without qualification: "The six distinctions offered by Dean Wigmore suggest a more nearly complete set of circumstances for ascertaining whether or not the attorney-client privilege has been waived." Vandenberg, 19 Wash. App. at 186. The concern raised by Wigmore, that a client may use an attorney "in double and inconsistent capacities," is especially relevant here. Attorney Israel is effectively acting as co-counsel while preparing to testify as a fact and expert witness.

If Mark Israel were to testify at trial as an expert witness, Plaintiff would be entitled to discovery of communications between PSM's trial counsel and attorney Israel. The use of attorney Mark Israel in that capacity is clearly "double and inconsistent." However, the Court finds that Defendant did not intend this wholesale privilege waiver by designating Israel as a mixed fact and expert witness. Nevertheless, the protection of the privilege compels an Order that Mr. Israel be prohibited from offering any expert testimony at trial.

The Court is satisfied, however, that PSM's decision to use Israel as a witness was based on his knowledge of the facts underlying this litigation, and not his "expert" capacity. Stripping away the protections of the attorney-client privilege from Israel's post-litigation file would be an unduly harsh punishment for PSM's witness designation.

### CONCLUSION

Defendant's Motion for Protective Order, docket no. 18, is GRANTED; Plaintiff's Motion to Compel, docket no. 20, is DENIED. Plaintiff shall destroy all copies of those

ORDER  6–

documents submitted *in camera* as part of Mark Israel's post-June 11, 2004 file. Mark Israel is designated as a fact witness only, and may not testify at trial as an expert witness. Defendant's Second Motion for Protective Order, docket no. 40, is DENIED; Plaintiff's Motion for Waiver of the pre-June 11, 2004 Attorney-Client Privilege, docket no. 45, is GRANTED.

IT IS SO ORDERED.

Dated this 10th day of June, 2005.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge

ORDER 7–